Bradbury, J.
Only one question will be considered in this opinion, and that question relates to the legality of the proceedings by which The Hillsboro Gas Light Company enlarged its object and purposes so as to authorize it to manufacture and furnish electric lights.
The special finding of fact discloses that in the year 1875 The Hillsboro Gas Light Company was incorporated under the laws of this state for the purpose of erecting gas works for the manufacture and sale of gas. Its capital stock was $40,000, divided into 800 shares of $50 each, fifty per cent, of which had been paid in; when, in 1888, the company attempted to enlarge its powers so as to permit it to manufacture and furnish electric lights in addition to gas lights. It appears that all the formal steps prescribed by statute to accomplish this purpose, were correctly taken, that the charter was, in fact, amended so as to authorize the corporation to manufacture and furnish electric lights, *594 that afterwards, the name of the corporation changed from The Hillsboro Gas Light Company to The Hillsboro Gas & Electric Light Company, and the capital stock reduced from $40,000 to $20,000.
Thereupon the directors of the new corporation, in order to secure funds for the purpose of purchasing the necessary plant, machinery and apparatus with which to produce and furnish electric light, passed the following resolution: “Resolved, that the president of the Hillsboro Gas and Electric Light Company be and he is hereby authorized to issue the bonds of said company to the extent of $14,000, in denominations of $500 each, and all payable on the first day of July, 1899. Said bonds to be dated July 1, 1889, and draw interest from date at the rate of six per cent, per annum, payable semi-annually, and shall be signed by the president and countersigned by the secretary of said company.” And, to secure the payment of these bonds, the president of the company was authorized to execute, on behalf of the company a mortgage, or deed of trust, upon the real estate, fixtures, material, privileges and franchises of the company. And thereupon the bonds were executed, and a mortgage also executed for the purpose of securing their payment.
If, under the statutes of this state, the old company, so-called, had power to amend its charter so as to authorize it to manufacture and sell electric light instead of, or in addition to gas, the new corporation, so-called, should not be regarded as a distinct entity from its predecessor, but rather as the samé body, but clothed with enlarged powers and a new name. It is, however, probably immaterial to the question under consideration, which view of this question of identity is adopted, for in *595 either case, whether the new company should he regarded as distinct from the old one or a continuation of it under a new name, the validity of the bonds and mortgage in question depends upon the authority of the corporation to construct and pay for machinery and apparatus adapted to generate electricity, and to generate-and sell the same for lighting purposes. If the new concern had no power to engage in the production and sale of electric light, the bonds in question having been issued to provide the machinery, etc., necessary to the production of electric lights, and the mortgage given to secure them, would be void, at least in the hands of those who had notice of the purpose for which the bonds were issued, unless the corporation and its stockholders should be estopped to set up this want of power. They would have been void for the reason that they were issued for a purpose which the corporation had no power to accomplish. The circuit court was of the opinion that the facts established by the evidence, did raise such an estoppel, and also that the bonds, or most of them, were held for value by bona fide owners who were not chargeable with notice of want of uower in the corporation to issue them.
Without differing from the circuit court upon those questions, we rest the decision of this court upon the power of the corporation to make and issue the bonds in question, and to execute a mortgage on the corporate property to secure them. This, of course, depends upon the validity of the amendment made to its charter. By its original charter, authority is given to erect “gas works for the manufacture and sale of gas for the streets, and public and private buildings of the incorporated village of Hillsboro, Ohio.” It is quite clear that *596 under the powers thus given the corporation could not proceed to erect an electric light plant and manufacture and furnish electric light to the village of Hillsboro and its inhabitants. The obvious purpose of its creation was to manufacture and sell light to that village and its inhabitants, but it chose in the first instance to ask the state for authority to furnish a particular kind of light, and that authority and no other was given. Whether at that time any other means of lighting the streets of our towns and cities were known, is not material. For, whether there was or was not, the charter of this corporation then limited its right to the production and sale of gas and of course it had no power to do anything- else. In the year 1888, the corporation sought to enlarge its powers by amending its charter, and to that end applied to the state for and obtained authority to produce and sell to the same village and the same inhabitants and for the same purpose, i. e., to light the streets, etc., of the village of Hillsboro, a different agency, known under the name of electricity. The authority to apply for this amendment is found in section 3238a, Revised Statutes, which reads: ‘‘Any corporation, incorporated under the general corporation laws of the state may---amend its articles of incorporation so as to change the corporate name---or so as to modify, enlarge or diminish the objects or purpose for which it is formed; or so as to add thereto anything omitted from, or which might lawfully have been provided for in such articles originally; provided, however, that nothing under this supplementary section shall authorize a corporation to by amendment to change substantially the original purposes of its organization.”
*597 The power of amendment granted by the foregoing section is broad. The corporation may change its name or its place of business. It may enlarge or diminish the objects or purposes for which it was formed, and it may add to its articles of incorporation anything which might have been included in said articles originally. These extensive powers of amendment have only a single limitation, which is that the amendment does not change substantially the original purposes of the corporation. The right to amend its charter by adding whatever might originally have been included in the articles of incorporation, is expressly given. The power of amendment in that respect, and to that extent, received direct legislative sanction. The legislative mind was immediately directed to that particular matter, and the power to accomplish that end expressly and unequivocally granted. It would seem to follow from' this explicit and unambiguous grant of the right to amend the charter, so as to add what might have been originally included,that the making of such an amendment by a corporation, would not in any case in the contemplation of the legislature, substantially change the original purposes of its organization. This, certainly, is a reasonable construction, for surely no good reason can be assigned that would forbid the granting, by amendment, of any power that might have been originally granted. If the public welfare or convenience did not demand the exclusion of the power originally, why, or upon what principle, should they deny its being given by amendment of the charter? No sound reason has been advanced against the policy of granting to the same corporation the power to make and sell gas for the purpose of lighting public streets *598 and places and public and private buildings, and also conferring the power to generate electricity and apply it to the same purposes, and we can see none. Each power is but a different means to the same end. The ultimate object or purpose for which each agency is employed, is to provide light. Originally the Hillsboro Gas Light Company sought to accomplish this object by means of manufactured gas; afterwards it was discovered that this object could be in some respects more satisfactorily accomplished by electricity. We think an amendment of its charter so as to authorize it to employ for this purpose electricity is expressly authorized by that provision of section 3238a which permits anjr amendment that add powers which “might lawfully have been provided for in said articles originally. ”
This court, in the case of live Steubenville Gas & Electric Light Company v. Taylor, Secretary of State, 55 Ohio St., 61, had occasion to consider the extent to which corporate charters may be amended under section 3238a, Revised Statutes. It may be observed, in passing, that the original charter of the relator in that case conferred upon it the power to employ both gas and electricity much more extensively than the amended charter of the Hillsboro Gas & Electric Light Company permitted, and yet no suggestion was made that the exercise of such powers was not authorized by our laws. In that case the corporation already had, as we have seen, power to employ both gas and electricity for producing light, etc., sought to enlarge its powers so as to obtain the authority to operate a street railway.
This court was of the opinion that the power thus sought, would, if obtained, change substan *599 tially the original purpose of the corporation, and denied the right to that amendment. That conclusion, however, in no wise conflicts with the conclusions reached in this case.

Judgment affirmed.